IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **COREY SMITH,** | ) | CASE NO. 7:14CV00002 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **OFFICER S. TAYLOR, <u>ET</u> <u>AL.</u>,** | ) | By: Robert S. Ballou |
| | ) | United States Magistrate Judge |
| **Defendant(s).** | ) | |

**REPORT AND RECOMMENDATION**

    Corey Smith, a Virginia inmate proceeding <u>pro</u> <u>se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, who are correctional officers at Red Onion State Prison, violated his rights under the U.S. Constitution and state law. Specifically, Smith alleges that officers used excessive force against him, denied him medical attention, verbally threatened him, and retaliated against him by denying him recreation for a month. Defendants filed a motion for summary judgment, and Smith responded. Thereafter, the court referred the case to me under 28 U.S.C. § 636(b)(1)(B).

    After careful review of the parties' evidence, I now present my proposed findings of fact, conclusions of law, and recommended disposition. For the reasons set forth below, I **RECOMMEND** that defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**. Because I find genuine issues of material fact in dispute as to Smith's § 1983 claims of excessive force and bystander liability, I recommend that the motion be denied as to these claims, and the related state law claims of assault, battery, and negligence regarding medical care, but that the motion be granted as to all other § 1983 claims and that the court decline to exercise supplemental jurisdiction over Smith's other state law assault claim.

# I. BACKGROUND

## A. Smith's Allegations and Claims

Smith alleges the following sequence of facts relevant to his claims. During the morning of September 19, 2013, Officers Taylor and Lawson came to Smith's segregation cell and asked if he wanted outside recreation. Smith said that he did. Taylor said, "I shouldn't let yo[ur] ass go anywhere, all that d*** paperwork you keep filing on everybody," and Lawson expressed similar sentiments. (Compl. 3.) The officers said to each other that Smith would learn filing paperwork at Red Onion "is going to cause him a lot of trouble." (Id. at 4.) Smith said he would file paperwork on staff who threatened to assault him, referring to a prior incident when Taylor had threatened to "beat" Smith over a lawsuit Smith had filed against other prison officers. Taylor said, "I had enough of your f****** mouth and you best closed [sic] it or get f***** up." (Id.) Taylor "continued to try to provoke [Smith] to become disruptive so th[at] he could physically assault him." (Id. at 5.)

Once Smith was locked in the recreation cage, Taylor asked Smith if he had filed a grievance about their discussion of Smith's prior lawsuit. Smith said he had filed a grievance about that incident and that after his recreation time, he intended to file another grievance against Taylor for "threats and harassment". Taylor then asked, "What are you going to do about that lawsuit Smart ass?" (Comp. 6.) Smith answered, "None of your business, man. Why do you keep harassing me about a lawsuit that has nothing to do with you?" (Id.) Taylor said, "it all has something to do with me, n*****. Now are you going to drop it?" Smith said he would continue the lawsuit because officers had violated his rights. Taylor said, "You don't have any rights now. Your rec is being taken." (Id.) The officers then cut short Smith's recreation time, purportedly based on Smith's threats toward them.

2

As Smith exited the cage in full restraints, Taylor applied "mix martial art wrist locks," which caused Smith "extreme pain in his left arm, wrist and hand." (Id.) Smith told Taylor that the grip was hurting him and that the restraints were too tight, but Taylor called him obscene names and racial slurs. Smith then asked Lawson for help, and Lawson said, "That's what happen[s] when you file paperwork against everybody. . . . You deserve every bit of what you are getting." (Compl. 9.) Taylor continued the wrist locks, making them even more painful, until the officers had placed Smith into his cell. Smith's screams that Taylor was twisting his wrist and using force attracted other inmates' attention, and they yelled for Taylor to stop. Taylor told Smith, "Don't cry now you lil [sic] bitch." (Id. at 10.)

Smith alleges that after the incident, his left wrist was swollen and bruised, his wrist, hand, and finger were bleeding, and his left thumb had partially lost feeling. He asked Taylor and Lawson to call a nurse, but they refused. Taylor said, "I hope it's broken." (Id. at 12.)

Shortly after this incident, Building Sgt. Miller heard about it and came to Smith's cell. Smith told Miller about the assault and asked to see a nurse for his pain. Miller said, "You're not getting any medical treatment and you best go lay down or [I] is gon be [sic] your fucking ass." (Compl. 13.) Seven and a half hours after the assault, when a nurse came by during pill pass, Smith told her that he had been assaulted. She documented his injuries and gave him some Motrin.

On September 24, 2013, Smith told Lt. Franklin about the assault and Miller's failure to provide medical care. Miller threatened to beat Smith for telling on him to his superior officer. Smith alleges that Miller and Lawson denied him outside recreation for a month "as part of his punishment for filing a grievance" and for reporting on Miller to Franklin. (Id. at 17.)

3

In his § 1983 complaint, Smith sues Taylor, Lawson, and Miller, alleging the following claims: (1) Taylor's use of wrist locks was excessive force, and Lawson failed to intervene to stop that use of force, in violation of Smith's constitutional rights; (2) Taylor's use of force constituted the torts of assault and battery under state law; (3) refusal by Taylor and Lawson to grant Smith's request after the escort procedure for medical attention, and Miller's refusal to grant Smith's later request for medical attention, constituted negligence under state law;[1] (4) Miller and Lawson deprived Smith of recreation for a month in retaliation for his complaints about officers, in violation of his constitutional rights; and (5) Miller's threat to "beat" Smith constituted assault under state law. As relief, Smith seeks injunctive relief (specifically reclassification, a permanent transfer out of the western region of the state, and restoration of privileges) and monetary damages.

## B. The Pending Motion

Defendants have filed a motion for summary judgment, with several supporting affidavits. Taylor and Lawson state that after they escorted Smith and another inmate to recreation on September 19, 2013 without incident, Smith verbally "threatened to put a knife in [Taylor] or have some of his people do it for him." (Taylor Affid. 1, ECF No. 15-1.) Taylor reported the threat to Sgt. Miller, and the decision was made for Smith to be returned to his cell. Taylor and Lawson deny that they used or saw anyone use excessive force against Smith.[2] Defendants' exhibits indicate that Taylor charged Smith with threatening bodily harm on September 19, 2013, and Smith was convicted and fined $4.00.

---

[1] Smith does not bring any § 1983 claim regarding these officers' alleged refusal to provide him immediate access to medical attention.

[2] Taylor and Lawson state that they escorted Smith from the recreation area to his cell, holding him by the shoulder and upper arm, which is standard escort technique. Taylor states that he does not have "martial arts" training and denies twisting Smith's wrist or using any martial arts technique during the escort.

4

Taylor and Lawson state that they have no memory of Smith asking for medical attention on September 19, 2013, and Miller denies that Smith did so.  Defendants also submit medical records as evidence that Taylor received medical attention that day, for what the nurse noted as "slight swelling and slight redness" in his left wrist area.  Records indicate that in response to Smith's September 30, 2013, complaint about left wrist pain; a doctor examined Smith on October 3, 20132, and ordered an x-ray of his left hand, which showed no definitive acute fractures or bony dislocations.  After medical staff discussed these results with Smith, no follow up visits for left wrist pain were ordered or requested.

Defendants also offer evidence that Smith did not exhaust administrative remedies regarding his claim that Lawson and Miller retaliated against him by denying him recreation for a month for reporting them to a higher ranking officer.  Because Smith thus failed to comply with 42 U.S.C. § 1997e(a), they move for dismissal of this claim.  Finally, defendants assert that the court should decline to exercise supplemental jurisdiction over Smith's state law claims under 28 U.S.C. § 1367(c) and dismiss them without prejudice.

Smith has responded to defendants' motion, making the matter ripe for disposition.  In his affidavit, Smith states that during the escort back to his cell, Taylor used one hand to apply "wrist locks" and to pull and jerk on the restraints, causing Smith "extreme pain in his left arm, wrist, and hand."  (Resp. Affid. 5, ECF No. 19.)  Smith also states that the surveillance camera in the vestibule, which is not currently part of the record, would show Taylor's wrist locks during that part of the escort procedure.

5

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotations, alterations, and citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Detailed factual allegations in a verified, *pro se* complaint may be sufficient to withstand a motion for summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (citation omitted).

### B. Constitutional Claims

Section 1983 "is designed to provide a comprehensive remedy for the deprivation of constitutional rights." Smith v. Hampton Training Sch. for Nurses, 360 F.2d 577, 581 (4th Cir. 1966). To state a claim under § 1983, "a plaintiff must establish three elements . . . : (1) the

6

Case 7:14-cv-00002-GEC-PMS   Document 23   Filed 02/24/15   Page 6 of 14   Pageid#: 161

deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The defendants, as state officers employed by the Virginia Department of Corrections ("VDOC"), do not deny being persons subject to suit under § 1983 for alleged violations of Smith's constitutional rights. Therefore, the court's sole inquiry on Smith's § 1983 claims is whether Smith has shown disputed facts on which he could prove defendants violated his constitutional rights.

### 1. Excessive Force and Bystander Liability

Smith alleges that Defendant Taylor used excessive force against him in violation of his constitutional rights. It is well established that only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). On the other hand, not every malevolent touch by a prison guard amounts to deprivation of constitutional rights. Hudson, 503 U.S. at 9.

In addressing an Eighth Amendment claim of excessive force, the court must inquire whether the officer, subjectively, applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (id. at 6) (internal quotation marks and citations omitted) and whether the officer's actions were, objectively, "harmful enough to establish a constitutional violation." Id. at 8 (internal quotation marks and citations omitted) (emphasis added). The subjective inquiry considers: (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any efforts made to temper the severity of a forceful

7

response.  Id. at 7.  The objective inquiry determines if the challenged action constituted more than a "de minimis use[ ] of physical force"  Id. at 10.

In short, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (internal quotation marks and citation omitted).  The type and extent of the injury the inmate suffered is relevant to both of these determinations: as a factor in determining "whether the use of force could plausibly have been thought necessary in a particular situation" and as "some indication of the amount of force applied."  Id. at 37 (internal quotation marks and citations omitted).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency [and the Eighth Amendment] always are violated . . . . whether or not significant injury is evident."  Hudson, 503 U.S. at 9.

Taking Smith's version of events in the light most favorable to him, I find that he has demonstrated material facts in dispute on which he could prove that on September 19, 2013, Taylor used excessive force against him in violation of his Eighth Amendment right.  Smith alleges that Taylor verbally expressed frustration at Smith over his past lawsuit and grievances; that with Smith in full restraints and Lawson holding one of Smith's arms, during the entire escort from the recreation area back to Smith's cell, Taylor applied additional force on the handcuffs and on Smith's thumb and wrist which caused Smith pain; that Smith told Taylor and Lawson that the restraints and Taylor's actions were causing pain, but Smith did not stop, and Lawson did not make him; and Smith suffered several days of pain in his wrist and thumb as a result of the officers' actions and omissions.  Because a reasonable jury could resolve these disputed facts in Smith's favor and find that Taylor knowingly, maliciously, and sadistically used more force than the situation required with the intent to cause harm to Smith and in so doing,

8

caused Smith pain, I cannot find that Taylor is entitled to judgment as a matter of law. Therefore, I recommend that the court deny Taylor's motion for summary judgment as to Smith's claim of excessive force.

I also find that Smith has adduced evidence on which he could persuade a jury to find that Lawson failed to protect him from Taylor's unconstitutional use of force on September 19, 2013. Smith's evidence is that during the escort procedure, Lawson was positioned on Smith's right side where he must have observed Taylor's unnecessary use of physical force, applied in addition to full restraints, and must have heard Smith's protestations about the pain Taylor's actions were causing, but refused to intervene to make Taylor stop the excess force. Because a reasonable jury could find from these facts that Lawson knew Taylor's actions were violating Smith's constitutional rights and had a reasonable opportunity to intervene, but failed to do so, I cannot find that Lawson is entitled to judgment as a matter of law. Therefore, I recommend that the court deny Lawson's motion for summary judgment as to Smith's claim of bystander liability against him.

### 2. Retaliation

A § 1983 claim of retaliation requires the plaintiff inmate to state facts supporting a reasonable inference that each defendant took the alleged retaliatory action because of plaintiff's exercise of some constitutionally protected right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Inmates do not have a constitutionally protected right to a prison grievance procedure. Id.; Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (finding that prisoner's use of grievance procedures is not a protected First Amendment right). Moreover, bare assertions of retaliation, without supporting facts, do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74-75.

Smith alleges in claim (4) that Miller and Lawson deprived him of recreation privileges to retaliate against him because of his grievances and his report to Franklin. Because Smith's use of the grievance procedure is not a constitutionally protected right, however, his allegations of retaliation for that action do not state an actionable claim under § 1983. Adams, 40 F.3d at 75. Moreover, Smith does not allege any factual basis for his conclusory assertion that his temporary loss of recreation privileges was motivated in any way by his report to Franklin. Id. Therefore, I find that Miller and Lawson are entitled to judgment as a matter of law on this claim, and recommend that the court grant their motion for summary judgment accordingly.

Moreover, defendants have also demonstrated that Smith failed to exhaust administrative remedies as to this claim, as required under 28 U.S.C. § 1997e(a). Defendants' evidence is that Smith never filed a regular grievance about the alleged retaliatory deprivation of recreation privileges for a month, and Smith fails to produce any evidence on which he could persuade a fact finder to rule in his favor on this exhaustion issue. See Anderson, 477 U.S. at 248 (holding that to survive summary judgment, a nonmoving party may not rest on the "mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial"). Because Smith has thus failed to demonstrate a genuine issue of disputed fact showing exhaustion of his retaliation claim, Miller and Lawson are also entitled to summary judgment under § 1997e(a).

### B. State Law Claims

Smith asserts his other claims in this action under Virginia law. Section 1983 was intended to protect only federal rights guaranteed by federal law, not to not vindicate tort claims for which there are adequate remedies under state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, Smith's state law claims are not independently actionable under § 1983,

10

the federal statutory basis for his bringing this lawsuit in federal court. See 28 U.S.C. § 1331. This fact does not foreclose the court for addressing all of his state law claims, however. The Court's supplemental jurisdiction is set out in 28 U.S.C. § 1367(a) which provides as follows:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(c) provides the basis for the court not to exercise supplemental jurisdiction. This section states,

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Defendants move for the court to decline supplemental jurisdiction over all of Smith's state law claims and dismiss them without prejudice, but provide no independent basis to dismiss the state law claims other than their urging for the dismissal of all federal claims. I do not find it appropriate to summarily dismiss Smith's state law claims of assault and battery against Taylor (Claim 2) and negligent denial of medical care against Taylor and Lawson, and Miller (Claim 3) after Taylor's alleged battery and use of excessive force. These claims "form part of the same

11

case or controversy"[3] as the § 1983 claims which survived summary judgment. In so doing, I make no finding that Smith has alleged adequate facts to state a cause of action under these state law claims, that the claims have merit or that viable defenses do or do not exist.

Smith's other state law claim does not bear the same close relationship to the surviving, original jurisdiction claims under § 1983, however. See Dargis v. Sheahan, 526 F.3d 981, 991 (7th Cir. 2008) (finding survival of one federal due-process claim does not require court to retain jurisdiction over seven state-law claims). "[A]ctual dismissal of all federal claims is not required for a district court to exercise the discretion afforded it regarding supplemental jurisdiction." Id.

Smith's assault claim (5) against Miller for verbally threatening him is separated in time and fact from the surviving federal claim regarding the use of force incident. The factual allegations surrounding this assault claim outline a different case and controversy against a different defendant, separate and apart from Smith's § 1983 case against Taylor and Lawson. Indeed, because this assault claim against Miller is completely unrelated to any federal claim in the case, § 1367(a) does not grant the court supplemental jurisdiction it. Accordingly, as to claim (5), I recommend that the court grant defendants' motion, exercise its discretion to decline supplemental jurisdiction under § 1367, and dismiss claim (5) against Miller without prejudice.

### III. RECOMMENDED DISPOSITION

Based on the proposed findings of fact and conclusions of law, I **RECOMMEND** that defendants' motion for summary judgment (ECF No. 14) be **GRANTED IN PART AND DENIED IN PART**. Specifically, I recommend that the motion for summary judgment be

---

[3] As stated, Smith does not present any § 1983 claim that Taylor, Lawson, and Miller violated his constitutional rights by refusing to provide him immediate access to medical attention after the use of force incident, and Smith's facts do not support such a claim. Only a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102 (1976). Prison personnel with no personal medical expertise are entitled to rely on the professional judgment of the medical staff charged with providing care to inmates. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir.1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.1990)).

**DENIED** as to Smith's § 1983 claim (1) alleging that Taylor used excessive force against him, and Lawson failed to intervene; and that the court exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Smith's state law claim (2), alleging assault and battery by Taylor and state law claim (3), alleging negligence by Taylor, Lawson, and Miller, regarding Smith's alleged need for medical treatment of his injured hand. I recommend that the motion for summary judgment be **GRANTED** as to Smith's § 1983 claim (4), alleging that Miller and Lawson deprived him of recreation in retaliation for actions separate from claim (1); and that the court decline to exercise Smith's assault claim (5) under state law against Miller for verbally threatening to beat Smith. I further recommend that claims (1), (2), and (3) be set for a bench trial at the court's earliest convenience.

      The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The clerk shall send a copy of this report and recommendation to plaintiff and to counsel of record for the defendants.

>Enter: February 24, 2015
>
>/s/ Robert S. Ballou
>
>Robert S. Ballou
>United States Magistrate Judge